IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CT-03341-M

ROBERT S. BALLARD,  )
                Plaintiff,  )
                          )
v.  )       ORDER
                          )
JOHN J. DOZIER, et al.,  )
                Defendants.  )

This cause is before the court on plaintiff's pending motions, [D.E. 84, 86], and defendants' motion for summary judgment, Mot. [D.E. 77]. These motions are ripe for review.

Relevant Procedural History:

On November 6, 2020, Robert S. Ballard ("plaintiff"), a state inmate proceeding *pro se* and without prepayment of fees, filed this complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 8].

Plaintiff's verified complaint generally alleges that, on July 30, 2018, at Central Prison Hospital, Officer John Dozier ("Dozier") used excessive force against him, and Officer Brittany Coleman ("Coleman"), Officer Patricia Hunt ("Hunt"), and Sergeant Leslie McIver ("McIver") stood by and did not try to stop Dozier's use of excessive force. See Compl. [D.E. 1] at 5–7.

On May 26, 2021, the court conducted its initial review of the complaint, and allowed the action to proceed, but denied a motion to expedite. Order [D.E. 10].

On October 29, 2021, the court denied without prejudice plaintiff's motions for entry of default, denied as moot plaintiff's motion for a ruling on his motions for entry of default, granted

defendants' motion for leave to file an out-of-time motion for an extension of time to file an answer as to Dozier and Coleman, and granted defendants' motion for an extension of time until November 22, 2021, for Dozier and Coleman to answer or otherwise respond. Order [D.E. 31].

On November 22, 2021, defendants answered the complaint. [D.E. 34].

On November 23, 2021, the court denied plaintiff's motions for reconsideration and appointment of counsel and referred the case to United States Magistrate Judge Robert B. Jones, Jr. for entry of a scheduling order to include a period of discovery. Order [D.E. 35].

On March 7, 2022, Judge Jones allowed in part and denied in part plaintiff's various motions seeking to compel discovery and for sanctions. Order [D.E. 48].

On April 7, 2022, Judge Jones denied plaintiff's various additional motions to compel discovery and for sanctions. Order [D.E. 56].

On April 22, 2022, Judge Jones directed defendants, by April 29, 2022, to file a sworn statement or declaration addressing plaintiff's access to medical records and allowed plaintiff ten days thereafter to file a response. Order [D.E. 62].

On April 25, 2022, defendants filed a response. [D.E. 63].

On May 12, 2022, Judge Jones denied plaintiff's various additional motions to compel and for sanctions. Order [D.E. 69].

On June 13, 2022, the court denied plaintiff's motion for reconsideration and referred the action to Judge Jones for resolution of lingering discovery-related disputes. Order [D.E. 72].

On June 14, 2022, Judge Jones denied plaintiff's motions to compel discovery, and extended the discovery and dispositive motions deadlines. Order [D.E. 73].

2

On June 21, 2022, Judge Jones granted defendants' motion for an extension of time until September 15, 2022, to file dispositive motions. Order [D.E. 75].

On September 15, 2022, defendants moved for summary judgment, Mot. [D.E. 77], and filed a memorandum in support [D.E. 78], a statement of material facts [D.E. 79], an appendix [D.E. 80], and a motion for leave to manually file a video, Mot. [D.E. 81].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified plaintiff about the motion for summary judgment, the consequences of failing to respond, and the response deadline. [D.E. 82].

On September 16, 2022, the court granted defendants' motion for leave to manually file a video. Order [D.E. 83].

On September 23, 2022, plaintiff filed the instant self-styled "motion to advance cause for pre-trial and trial dates [sic]."[1] Mot. [D.E. 84].

On September 27, 2022, plaintiff filed a response in opposition to defendants' motion for summary judgment [D.E. 85], together with an attached memorandum in support [D.E. 85-1], declaration [D.E. 85-2], and exhibits [D.E. 85-3].

On November 21, 2022, plaintiff filed the instant motion for copies.[2] Mot. [D.E. 86].

---

[1] In support of this motion, plaintiff argues that defendants failed to file dispositive motions by the court-ordered deadline. See Mot. [D.E. 84] at 1. Plaintiff further asserts that, because the events at issue occurred more than four years ago, the case is ready for a settlement conference and the setting of a trial date. Id. at 1–2. Because defendants timely filed a motion for summary judgement, the court DENIES this motion as premature in part and as moot in part.

[2] Plaintiff asserts his property was packed by officials, property was missing, and he needs a copy of the defendants' motion for summary judgment and his response. See Mot. [D.E. 86] at 1–2. A *pro se* litigant is responsible for maintaining his own legal records, and plaintiff is not entitled to copies at the Government's expense. See United States v. Gallo, 849 F.2d 607, 1988 WL 60934, at *1 (4th Cir. May 31, 1988) (per curiam) (unpublished table decision). The court DENIES this motion. Instead, he may file a record system request through the Clerk's Office or use the Public Access to Court Electronic Records ("PACER") program. See 28 U.S.C.A. § 1914, Judicial Conference Schedule of Fees, at ¶4; http://www.nced.uscourts.gov/pdfs/CopyRequestInstructions.pdf (visited May 11, 2023).

Factual Disputes:

The parties agree Dozier tried to handcuff plaintiff through a door trap slot on July 30, 2018, but disagree if plaintiff was combative or pulled away,[3] if Dozier's used excessive force,[4]

---

[3] Defendants state, in relevant part: "surveillance video from the Plaintiff's cell demonstrates the plaintiff's non-compliance with staff directives to be out of bed for his medical screening"; "plaintiff appears agitated, pointing his finger, and yelling something"; plaintiff gets out of his bed, moves himself to the entrance of his cell, and is provide instructions by Dozier; and "plaintiff can clearly be seen trying to pull his right handcuff into his cell and away from Officer Dozier." Defs.' Stmt. Mat. Facts [D.E. 79] at ¶¶7–10. Plaintiff, by contrast, states: "How does a video footage show agitation of a person?"; and "It is very clear plaintiff did not move his left or right hand from the video footage." Pl.'s Resp. [D.E. 85] at 4. Plaintiff declares, in relevant part: "the video submitted by Defendants can be viewed in slow motion, as I had done, and never see plaintiff move his hands from the trap door [sic]." Pl.'s Decl. [D.E. 85-2] at 2. Dozier declares, in relevant part: plaintiff did not want to be restrained to have his vitals taken; when Dozier "ordered him to the doorway, [plaintiff] became verbally combative, stating 'this is bullshit'"; plaintiff put his right hand through the food passage tray, Dozier was able to secure this hand but, when Dozier attempted to place his left hand into restraints, he "began to pull his arms back into his cell through the food passage tray [sic]." Defs.' App., Ex. 2, Dozier Decl. [D.E. 80-8] at ¶¶4–6.

[4] Defendants state, in relevant part: "Dozier is seen regaining compliance of the Plaintiff to prevent the Plaintiff from bringing the handcuffs into his cell"; "The camera angle is somewhat obscured as Officer Dozier enters the Plaintiff's cell, but the Plaintiff can be seen falling backwards over his wheelchair, with Officer Dozier's access to the Plaintiff blocked by the Wheelchair"; "At no point do Officer Dozier's feet appear to make contact with the Plaintiff, as alleged"; "Plaintiff begins to resist Officer Dozier and Officer Dozier can be seen struggling to control Plaintiff on the floor"; and "During the struggle, it can be seen that Officer Dozier does not kick the plaintiff; does not stand on plaintiff's knee; and does not drop his full body weight on to the small of plaintiff's back." Defs.' Stmt. Mat. Facts [D.E. 79] at ¶¶10–12, 14–15. Plaintiff, by contrast, states: the video evidence "clearly shows Officer Dozier pull plaintiff's arms through the trap door, placing handcuffs on both hands and holding on to plaintiff's hands, then opening the cell door, throwing plaintiff to the floor and dropping down on plaintiff's back." Pl.'s Resp. [D.E. 85] at 4. Plaintiff declares, in relevant part: the video shows "Dozier grabbing plaintiff's hand ripping it through this trap door, with both arms being pulled through this trap door, skin being ripped off both hands, arms–plaintiff was pulled face first into the steel door busting plaintiff's face, nose, and blacking both eyes [sic]"; "Dozier while holding plaintiff's hands and arms with handcuffs on, opens the cell door, pulling plaintiff out of his wheelchair, as plaintiff cannot stand up at all [sic], and defendant Dozier threw plaintiff on the floor kicking plaintiff and dropping down on to plaintiff's back"; and plaintiff is a 68-year-old "disabled person confined to a wheelchair who cannot walk and cannot stand up." Pl.'s Decl. [D.E. 85-2] at 2–3. Dozier declares, in relevant part: "offenders having unsecured restraints on their hands pose a safety and security concern within the facility. Therefore, I pulled back to prevent [plaintiff] from having partially unsecured metal restraints in his jail cell"; "I was eventually able to gain control of [plaintiff's] left hand and secured that as well"; 'Once both of his hands were secure, [plaintiff] stated, 'I'm good, I'm not gonna do nothing,' or words to that effect, so [Dozier] released my grip from his restraints and opened the cell door for medical personnel to obtain [plaintiff's] vitals"; "When [Dozier] entered his cell, [plaintiff] immediately stood up from his wheelchair and attempted to strike [Dozier] in the face with his restraints"; out of "safety concerns" for himself, his coworkers, and plaintiff, Dozier "took control of [plaintiff's] hands and attempted to seat him back in his wheelchair"; "During this encounter, [plaintiff] made several threatening statements, such as, 'I'm gonna bust you in your big bald head you [expletive deleted]' and 'you and me baldy, one on one in the shower'"; "these threats were heard by others in our vicinity"; after receiving medical care, and once Dozier removed the restraints, plaintiff "began kicking his cell door, and screaming"; and "At no point in this encounter with [plaintiff] did I apply force with the intention of causing harm, nor did I harbor any feelings of ill-will, spite, or hatred towards" plaintiff. Defs.' App., Ex. 2, Dozier Decl. [D.E. 80-8] at ¶¶7–11, 17–18, 20–21.

4

whether plaintiff tripped or was thrown when defendants tried to return him to his wheelchair,[5] the extent of plaintiff's injuries,[6] and whether the other defendant officers reacted appropriately.[7]

Legal Standard:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading,

---

[5] Defendants state, in relevant part: "After the Plaintiff trips over his wheelchair and falls to the floor, Officer Dozier can be seen gently gaining control of the Plaintiff's arm and upper torso." Defs.' Stmt. Mat. Facts [D.E. 79] at ¶13. Plaintiff, by contrast, states: the video shows Dozier "throwing plaintiff at his wheelchair and the wheelchair rolling away and plaintiff being thrown on the floor"; and "Dozier failed to lock the wheelchair wheels when he threw plaintiff at the wheelchair, that's why plaintiff fell to the floor." Pl.'s Resp. [D.E. 85] at 5. Plaintiff declares, in relevant part: "then Dozier threw plaintiff at his wheelchair and plaintiff went on the floor because Dozier did not lock the wheels on the wheelchair [,] and it rolled away"; and "plaintiff did not trip as defendants state." Pl.'s Decl. [D.E. 85-2] at 2. Dozier declares, in relevant part: "In an effort to prevent [Dozier] from guiding him back into his wheelchair, [plaintiff] tried to step backwards and ended up tripping over his wheelchair"; when plaintiff tripped, Dozier "lost control over his restraints and [plaintiff] ended up on falling on the ground"; "Once on the ground, [Dozier] secured [plaintiff] to prevent him from harming himself or others." Defs.' App., Ex. 2, Dozier Decl. [D.E. 80-8] at ¶¶12–14.

[6] Defendants state, in relevant part: "After the incident, medical personnel take the plaintiff's vitals and administer medication before cleaning his abrasions"; and "photographs of the Plaintiff taken after this incident to not show the presence of black eyes." Defs.' Stmt. Mat. Facts [D.E. 79] at ¶¶20–21. Plaintiff states that the color photographs show greater detail of plaintiff's injuries. Pl.'s Resp. [D.E. 85] at 5. Dozier declares: plaintiff "was immediately screened by medical personnel who determined that he only suffered superficial injures and no emergent medica care was needed." Defs.' App., Ex. 2, Dozier Decl. [D.E. 80-8] at ¶19.

[7] Defendants state, in relevant part, that once Dozier secured plaintiff in handcuffs, the other defendants: assist plaintiff after he "trips and falls on the floor," help Dozier place plaintiff into his wheelchair, and then "get out of the way to allow medical personnel to evaluate him." Defs.' Stmt. Mat. Facts [D.E. 79] at ¶¶16–19. Plaintiff, by contrast, states that McIver, Hunt, and Coleman "stood there watching and did nothing to stop Dozier from assaulting plaintiff." Pl.'s Resp. [D.E. 85] at 2. Dozier declares: as Dozier "secured" plaintiff, "Correctional Officer (CO) Coleman helped restrain his legs"; and "Once the situation was under control, CO Coleman, Sgt McIver, and [Dozier] placed [plaintiff] back in his wheelchair." Defs.' App., Ex. 2, Dozier Decl. [D.E. 80-8] at ¶¶15–16.

5

Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Arguments:

Defendants argue they are entitled to summary judgment because: any official capacity claims fail under the Eleventh Amendment; the claims against Dozier are contradicted by the record, fail to show malice, and fail to show injury; and the claims against the remaining defendants do not amount to deliberate indifference as there was not a substantial risk of serious harm and defendants did not act with a sufficiently culpable state of mind. Defs.' Mem. [D.E. 78] at 5–10.

In his response in opposition to defendants' motion for summary judgment, plaintiff argues, among other things: the video evidence shows Dozier "assaulting" plaintiff; the video does not support defendants' version of the facts; plaintiff was incapable of assaulting Dozier; Coleman, Hunt, and McIver "stood there watching and did nothing to stop Dozier from assaulting plaintiff"; the video shows Dozier pulling plaintiff's arms through the trap door, causing plaintiff's face to hit the door, and the photographic evidence shows injuries to plaintiff's arms, hands, and face; the video is incapable of showing plaintiff's purported agitation; defendants mischaracterize the video by failing to mention that Dozier and other officers "threw" plaintiff at the wheelchair but, because they failed to lock it, the wheelchair rolled away and plaintiff fell on the floor; the color photographs that plaintiff attaches better show his injuries at the hands of Dozier; there have been

6

many as 30 claims of excessive force leveled against Dozier; the unit manager "destroyed" video evidence that Dozier had earlier entered plaintiff's cell at approximately 7:00 a.m. on the date of this incident; the available video evidence shows Dozier pulling plaintiff's hands through the trap door, pulling plaintiff out of his wheelchair, throwing plaintiff on the floor, kicking plaintiff, and dropping his knee on plaintiff's back; but the video evidence does not show plaintiff pulling his hands back through the trap door or assaulting Dozier; and there is a genuine issue of material fact for trial. See Pl.'s Mem. [D.E. 85] at 1–4.

Discussion:

First, plaintiff's claims against defendants in their official capacities are barred by the Eleventh Amendment unless the state has waived immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989). Because North Carolina has not waived immunity, defendants are entitled to summary judgment on his official capacity claims. See Anderson, 477 U.S. at 249.

Next, to make out a *prima facie* case under the Eighth Amendment, "a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). "[T]he first showing requires the court to determine whether the deprivation of the basic human need was objectively sufficiently serious." Id. (emphasis and quotation omitted). The second showing "requires [the court] to determine whether subjectively the officials acted with a sufficiently culpable state of mind." Id. (emphasis, alteration, and quotation omitted); see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

7

To succeed in an Eighth Amendment excessive force claim, plaintiff must show that Dozier acted "with a sufficiently culpable state of mind," and "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quotations and alteration omitted). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted). "[T]he 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)). Factors for whether an officer acted wantonly include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Iko, 535 F.3d at 239 (citing Whitley v. Albers, 475 U.S. 312, 321 (1986)). The "question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers did use force for that reason." Brooks, 924 F.3d at 113.

As to his claim that the other defendants failed to intervene during Dozier's excessive force, a theory of "bystander liability . . . permits relief against an officer who (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." Id. at 110 (quoting Randall v. Prince George's Cty., 302 F.3d 188, 203 (4th Cir. 2002)).

The court has reviewed the video evidence upon which the parties seek to rely. See generally Pl.'s App., Ex. 1.G. This video lacks sound and includes two camera views, a cell view and a hallway view, that do not appear to be in sync.

8

The hallway view shows, in relevant part: circa 8:02 a.m., defendants and medical staff gather at plaintiff's cell, the cell door opens briefly, and then closes; circa 8:02 a.m. and 48 seconds, Dozier and another officer appear to speak to and point at plaintiff; circa 8:03 a.m. and 15 seconds, Dozier opened the trap door slot; circa 8:03 a.m. and 33 seconds, plaintiff appears to put his hands through the slot; circa 8:03 and 36 seconds, plaintiff extends his wrists through the slot; circa 8:03 and 39 seconds, Dozier starts to cuff one of plaintiff's wrists; circa 8:03 and 41 seconds, Dozier appears to pull the wrist out further; circa 8:03 and 43 seconds, plaintiff appears to pull his wrist back; circa 8:03 and 44 seconds, Dozier pulls more firmly on plaintiff's wrist; between 8:03 and 47 to 51 seconds, one of plaintiff's hands disappears into the cell, Dozier touches the cell door, the cell door begins to open, and plaintiff's other hand disappears into the cell; circa 8:03 and 53 seconds, Dozier enters plaintiff's cell; circa 8:04 and 1 second, another officer enters the cell; circa 8:04 and 3 seconds, a third officer enters the cell while a fourth officer and several medical personnel wait outside; circa 8:04 and 9 seconds, a fourth officer enters the cell; circa 8:05 and 51 seconds, one medical worker enters the cell; circa 8:06 and 4 seconds, a second medical worker enters the cell; circa 8:06 and 15 seconds, the third medical worker enters the cell; for approximately the next 27 minutes, a total of four healthcare workers enter and exit the cell at various times; circa 8:31, all healthcare workers have left the cell and the four officers leave the cell; circa 8:32, the cell door is closed and Dozier begins to remove plaintiff's handcuffs through the slot; circa 8:32 and 51 seconds Dozier shuts the trap door.

The cell view shows, in relevant part: circa 8:02 a.m. and 30 seconds, plaintiff is in his bed, he points to the door and says something; circa 8:02 a.m. and 35 seconds, plaintiff and then begins to get out of his bed, climbs into his wheelchair and rolls to the cell door by 8:02 a.m. and 45

9

seconds; circa 8:03 a.m. and 33 seconds, plaintiff is out of his wheel chair and appears to be laying on his side on the floor of the cell; circa 8:03 a.m. and 36 seconds, Dozier comes into view at the cell door and is moving the wheelchair out of the cell's entrance; circa 8:03 a.m. and 38 seconds, Dozier has fully entered the cell and grasps plaintiff's right arm; circa 8:03 a.m. and 40 seconds, plaintiff appears to roll away from Dozier's grasp; between 8:03 a.m. and 40 seconds and 8:04 a.m. and 20 seconds, Dozier appears to struggle with plaintiff on the floor, but the view of plaintiff is obscured; circa 8:04 a.m. and 20 seconds, plaintiff is visible and appears to be fully cuffed; circa 8:04 a.m. and 23 seconds, Dozier grasps the wheelchair with one hand while grasping plaintiff's cuffs; circa 8:04 a.m. and 25 seconds, Dozier sets the wheelchair upright and pulls it close to plaintiff; circa 8:04 a.m. and 40 seconds, a second officer can be seen helping to lift plaintiff; circa 8:04 a.m. and 45 seconds, Dozier and the second officer attempt to seat plaintiff, but the wheelchair slides out from under plaintiff and he is lowered to the floor on his backside; circa 8:04 a.m. and 47 seconds, a third officer holds the wheelchair; circa 8:04 a.m. and 55 seconds, Dozier and the second officer successfully place plaintiff in the wheelchair; circa 8:05 a.m. and 39 seconds, the first healthcare worker comes into view and appears to take plaintiff's vitals; circa 8:06 a.m. and 9 seconds, the second healthcare worker comes into view and begins swabbing plaintiff's face; circa 8:07 a.m. and 35 seconds, the second healthcare worker appears to swab plaintiff's wrists; circa 8:08 a.m. and 8 seconds, the third healthcare worker appears to give plaintiff medication and water; between circa 8:09 and 8:11 a.m., a healthcare worker continues swabbing plaintiff's wrists and arm while another healthcare worker gives plaintiff eyedrops; circa 8:12 a.m., a healthcare worker returns with a towel and continues to daub plaintiff's arms, wrists, and face for several minutes; between circa 8:14 and 8:25 a.m., plaintiff appears to converse with the officers in his

cell while a healthcare workers treat and bandage his hands, wrists, and arms; circa 8:25 a.m., a healthcare worker tends to his face; between circa 8:26 and 8:30 a.m., a healthcare worker uses a stethoscope on plaintiff while the fourth healthcare worker takes vitals; circa 8:30 a.m., a healthcare worker tends to plaintiff's face; circa 8:31 a.m., plaintiff is pushed in his wheelchair out of view while a healthcare worker cleans the floor; circa 8:33 a.m., plaintiff wheels himself back into view and places something on his bed-side tray; circa 8:33 a.m. and 15 seconds, plaintiff wheels himself toward the door and he goes out of view; circa 8:35 a.m. and 33 seconds, plaintiff comes back into view sitting in his wheelchair.

As to the objective component of an Eighth Amendment excessive force claim, plaintiff's photographic evidence reflects several abrasions, cuts, and bleeding on his face, hands, and arms. See Pl.'s Ex. A, [D.E. 85-3] at 1–3. Contra defendants' arguments–that plaintiff's injures arising from this incident were insufficiently serious–these injuries rise above de minimis harm. See Hudson, 503 U.S. at 8–9; Brooks, 924 F.3d at 112; Iko, 535 F.3d at 238.

As to the subjective component of the excessive force claim, the video does not clearly align with either party's description. Considering this inconclusive video evidence, and the irreconcilably disparate declarations of plaintiff and Dozier, and after viewing the evidence and the reasonable inferences in the light most favorable to plaintiff, see Scott 550 U.S. at 378, issues of material fact preclude entry of summary judgment on plaintiff's excessive force claim against Dozier. See Hudson, 503 U.S. at 7; Whitley, 475 U.S. at 321; Brooks, 924 F.3d at 116.

Further, because there are issues of material fact as to whether Dozier's alleged excessive force amounts to an "illegal act," Brooks, 924 F.3d at 111, the court also denies summary judgment to the remaining defendants on plaintiff's "bystander liability" claim, see Randall, 302 F.3d at 204.

11

To the extent plaintiff instead alleges defendants were deliberately indifferent to his serious medical needs, see Estelle v. Gamble, 429 U.S. 97, 104 (1976), he must show that they knew of and disregarded an objectively serious condition, known medical need, or substantial risk of serious harm, see Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016); Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

Here, plaintiff received medical attention immediately after the use-of-force event and, because they are not alleged to be medical providers, defendants generally are entitled to rely on the expertise of these providers with respect to his medical treatment. See Iko, 535 F.3d at 242 ("If a prisoner is under the care of medical experts . . . a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands." (quotation omitted)); see also Lee v. Young, 533 F.3d 505, 511 (7th Cir. 2008) ("[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."); Lewis v. Hoke Cnty., No. 1:17CV987, 2020 WL 5213929, at *7 (M.D.N.C. Sept. 1, 2020) ("[P]rison officials without medical training are responsible for seeing that prisoners are attended to by medical professionals. They are not responsible for determining the course of treatment or for overruling the opinions of those professionals." (citation omitted)), report and recommendation adopted, No. 1:17CV987, 2022 WL 292928 (M.D.N.C. Feb. 1, 2022), aff'd, No. 22-6171, 2022 WL 1641282 (4th Cir. May 24, 2022). Accordingly, defendants are entitled to summary judgment on this claim. See Anderson, 477 U.S. at 249.

## Conclusion:

In sum, the court: DENIES the "motion to advance cause for pre-trial and trial dates [sic]" [D.E. 84]; DENIES the motion for copies [D.E. 86]; GRANTS IN PART defendants' motion for

12

summary judgment as to the official capacity claims and to the extent plaintiff alleges deliberate indifference to his serous medical needs, but DENIES this motion as to the excessive force claim against Dozier and as to the "bystander liability" claims against Coleman, Hunt, and McIver. The court REFERS the case to United States Magistrate Judge Robert B. Jones, Jr. for a court-hosted settlement conference. Judge Jones will notify the parties how he wishes to proceed concerning the settlement conference, and the date on which it will be held. The court also APPOINTS North Carolina Prisoner Legal Services, Inc. ("NCPLS") for the limited purpose of assisting plaintiff in the court-hosted settlement conference. See Standing Order 21-SO-11 at ¶7.

SO ORDERED this 30th day of May, 2023.

*Richard E Myers II*
RICHARD E. MYERS II
Chief United States District Judge

13